1 | Mark Mausert, Esq.
Nevada Bar # 2398
2 | 930 Evans Avenue
Reno, Nevada 89512
3 | (775) 786 5477

4 | Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| JACQUELYN SANDAGE, | CASE NO. |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| STATE OF NEVADA, dba Nevada Highway Patrol and DOES I-X, | |
| Defendants. | |

COMES NOW plaintiff, through her attorney, and hereby files a "Complaint and Jury Demand" against the State of Nevada, and Doe Defendants I through X.

<u>Parties, Jurisdiction, Venue and Jury Demand</u>

1. Plaintiff is an adult woman who is, and at all relevant times was, employed by defendant State of Nevada, i.e., plaintiff currently holds the rank of Captain in the Nevada Highway Patrol, which is an agency within the Nevada Department of Public Safety. Plaintiff resides in northern Nevada, i.e., in Washoe County, State of Nevada. Plaintiff's current work station is in northern Nevada, i.e., in Carson City. Many of the acts, statements and omissions herein alleged occurred in northern Nevada. Accordingly, venue in this District exists pursuant to 28 U.S.C., section 1391(b). Plaintiff has obtained a "Notice of Right to Sue" from the Equal Employment Opportunity Commission, said Notice having been issued on August 25, 2006. This "Complaint and Jury Demand" is timely filed in accordance therewith. Plaintiff hereby requests a jury trial relative to all issues so triable.

2. Defendant State of Nevada is a political entity, i.e., it is one of the fifty States of the United States of America. Defendant State of Nevada operates, funds and administers the Nevada Highway Patrol, which is an agency which operates under the Nevada Department of Public Safety, which is in turn operated, funded and administered by the State of Nevada. Because the State of Nevada is herein sued pursuant to Title 42, sec. 2000e, et seq., of the United States Code, the State of Nevada does not possess Eleventh Amendment immunity relative to this case. At all times herein mentioned defendant State of Nevada (hereinafter "State") employed in excess of fifteen persons on a full-time basis, for at least twenty weeks per year.

3. This Court has jurisdiction pursuant to Title 28, section 1331 and/or section 1343. This Court has jurisdiction because this case is brought pursuant to a federal statutory scheme, i.e., Title 42, section 2000e, et seq. of the United States Code. The allegations made herein implicate this statutory scheme and thereby allege a violation of plaintiff's federally protected civil rights.

4. Doe defendants I-X are persons or entities who are in some way responsible for plaintiff's injuries and/or damages. When plaintiff learns of their true identities she will seek leave of Court in order to amend this "Complaint and Jury Demand" so as to properly name them herein.

<u>First Cause of Action</u>

(Sexually Hostile Work Environment)

5. Plaintiff hereby incorporates the allegations made in paragraphs 1 through 4, inclusive, as well as all of the other paragraphs herein, as though the same were fully stated herein.

6. Defendant promised to plaintiff, and to its other employees, it would enforce policies against sexual and/or gender harassment, and against retaliation as well. Defendant thereby assured plaintiff it would provide a work environment free of sexual and/or gender hostility. Defendant assured plaintiff it would conduct prompt ant thorough investigations in response to complaints of sexual and/or gender harassment and would implement timely, adequate remedial

action – sufficient to address past harassment and deter future harassment. Plaintiff relied upon these promises, which were made in part via the dissemination of written policies. As described herein, defendant has breached these promises.

7. Throughout a substantial portion of her employment, and especially the latter portion of her tenure, plaintiff has experienced sexual hostility and retaliatory hostility (directed at plaintiff in response to her opposition to sexual/gender harassment and/or discrimination) which a reasonable woman, similarly situated, would have found to constitute a hostile work environment "based on sex" in violation of Title 42, section 2000e, et seq. of the United States Code. Plaintiff herself did subjectively experience her work environment to be hostile and offensive "based on sex," e.g., based on the sexual/gender substance of the statements and/or the retaliatory nature of conduct and statements. At least some of the incidents which constituted part of the actionable course of conduct, of which plaintiff complains herein, occurred with 180 days of the filing of plaintiff's "Charge of Discrimination." Plaintiff is alleging a continuing violation. Accordingly, all of the incidents which are part of the actionable course of conduct of which plaintiff complains are subject to being litigated via this case.

8. Included within the actionable conduct and statements were a number of statements and incidents. Those statements and incidents, included but are not limited to, the following: plaintiff was leered at by a high placed management Nevada Highway Patrol (hereinafter "NHP") official and told "[o]h, you look good in uniform. I like a woman in uniform"; plaintiff was told by the former Chief of the NHP, Chief Dave Hosmer, "I know why I don't like that new jacket, I can't see your ass"; Chief Hosmer made a remark about the genitals of a male NHP Trooper, i.e., he stated the Trooper had a set of "cahones" and thereupon looked at plaintiff and stated, "[b]ut you wouldn't know about that"; Chief Hosmer ridiculed plaintiff in the presence of a number of NHP Troopers and employees by telling those present plaintiff was to "provide a warm, moist environment for the Troopers to flourish"; Chief Hosmer derided a promotion plaintiff had achieved, i.e., when speaking of another NHP Sergeant's promotion to a Lieutenant, Chief

Hosmer looked at plaintiff and stated, "[a]t least he did it the honorable way"; Chief Hosmer derisively referred to plaintiff, in the presence of other NHP employees as "the Princess"; plaintiff was openly referred to by some male employees of the NHP as "that fucking bitch," and such references were tolerated by management personnel of the NHP; an application for employment with the McDonald's restaurant chain was placed in plaintiff's "in-box" at her NHP office; plaintiff was denied recognition of her professional and professionally related scholastic achievements and those achievements were instead subject to derision, e.g., Chief Hosmer stated, "[c]hicks do better in school"; retaliatory hostility was directed at plaintiff which was well known throughout plaintiff's workplace to the point at which hostile remarks were made by some personnel, e.g., an inquiry to the effect, "[d]id you tighten the screws so hard on the Captain that you made her leave?" (plaintiff was aware of at least one of these remarks, and was generally aware of the sentiment); false rumors were spread among personnel of the NHP to the effect plaintiff had sexual relations with various male co-workers and supervisors; at least one male Major in the NHP undertook to interfere with a work-related promotional campaign plaintiff was being for considered for involvement with, said interference was justified by stating plaintiff had already received too much recognition and further recognition would cause other, male NHP employees to become upset; sexual remarks were openly made by a number of male NHP employees and were tolerated by NHP management personnel; Chief Hosmer referred to Human Resource Chief Ingrid Wetzel, in the presence of approximately three NHP Majors, as a "fucking cunt" – the Majors failed to undertake any remedial action, and said failure included the forbearance of even a report of this statement; Chief Hosmer made other sexist remarks openly, such as "[l]et me guess, it's about pussy" – plaintiff was made aware of such remarks by Chief Hosmer; Chief Hosmer openly made sexual jokes, some of which plaintiff was informed of, e.g., "[h]ow does a woman get rid of her dildo" – the answer/punch line being, "she puts a uniform on him and sends him out the door"; plaintiff's work performance was subjected to excessive scrutiny and at least one unfounded attempt to discipline her was made; plaintiff was made aware

of Chief Hosmer's propensity and inclination for engaging in retaliation, i.e., plaintiff was informed by a NHP Major of Hosmer's desire to deny a promotion to a female Dispatcher – in response to a complaint of him made by the female Trooper; plaintiff was threatened with insubordination charges, and was made aware of Chief Hosmer's desire to punish plaintiff via lodging insubordination charges against her; plaintiff was denied a pay incentive, or raise, in the amount of 5% of her salary, which male employees who were similarly situated received – plaintiff was denied this pay incentive in order to pander to the feelings of male officers who felt threatened and/or were jealous of plaintiff's advancement; plaintiff was informed, and was aware, of sexual and gender harassment directed at other female employees, e.g., plaintiff was made aware of Chief Hosmer's angry reference to Chief Ingrid Wetzell as a "fucking cunt"; plaintiff was also aware of the toleration by a number of management personnel of the NHP, e.g., the three Majors with whom Chief Hosmer was playing golf with, of foul, misogynistic verbiage, such as "fucking cunt"; plaintiff was made aware of various forms of harassment, e.g., the placement of feminine hygiene products on a desk by unknown NHP personnel; plaintiff's complaints and/or reports of sexual harassment were derided by the Director, e.g., he described such as "blown out of proportion," and "a big misunderstanding," – he also described some of the alleged perpetrators of misconduct as "good, upstanding guys.; plaintiff was told by the Director of the Department of Public Safety, in response to a complaint of sexual harassment, that she should "suck it up a little more"; plaintiff has witnessed and is aware of sexual/gender hostility and/or retaliatory hostility which has been directed at other employees; plaintiff was subjected to public slander by an unknown employee or employees of the NHP; remarks were made re a female complainant of sexual harassment to the effect "she deserved it"; defendant has delayed and/or refused to conduct timely and adequate investigations into instances of harassment directed at plaintiff and other employees – this failure has contributed to the hostility and to plaintiff's feelings of helplessness – this failure has also provided license for further harassment; and various other statements and conduct of a harassing and retaliatory character

were directed at plaintiff, plaintiff's authority as a Captain was undermined or discounted by the management of NHP; or were perpetrated in plaintiff's work environment. Plaintiff continues to be subjected to sexual/gender hostility and to retaliatory hostility.

9. The hostile work environment which plaintiff was subjected to was known to a number of management personnel of the NHP, i.e., through the knowledge of a number of managers the NHP knew of a number of misogynistic incidents which a reasonable woman would have found to be offensive. For instance, the NHP was aware, via the knowledge of three Majors, who witnessed Chief Hosmer refer to Chief Wetzel as a "fucking cunt" that Chief Hosmer was possessed of a propensity for using foul, misogynistic terms and for otherwise manifesting misogynistic sentiments. Chief Hosmer also announced, in the presence of a NHP Lieutenant, and various other NHP employees, that "women don't belong in law enforcement," or words to this direct effect. Various management personnel of the NHP knew Chief Hosmer habitually indulged in the use of foul, misogynistic terms and otherwise manifested hostility towards women and directed sexual/gender abuse towards women. Notwithstanding such knowledge, the NHP failed to implement timely, adequate remedial action – so as to ensure plaintiff and other female employees were protected from sexual/gender hostility and retaliatory abuse.

10. The NHP has a history of bypassing procedures with regard to promotions and assignments and to affording promotions and favorable assignments based on influence and connections. Such a practice has resulted in discrimination against plaintiff and other female employees, who have not benefitted from the "good ol' boy" system maintained by the NHP to the degree male employees have benefitted.

11. As a direct and proximate result of being subjected to sexual/gender hostility, including retaliatory hostility, plaintiff suffered emotional distress, loss of enjoyment of life, aggravation of medical symptoms re the tumor plaintiff is afflicted with, and anger and humiliation. It has been necessary for plaintiff to retain counsel and to incur costs in order to

attempt to vindicate her right to a work environment free of sexual and/or gender hostility, retaliatory hostility and retaliation.

### Retaliation

12. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 11, inclusive, as though the same were fully stated herein.

13. Some of the discriminatory/retaliatory conduct to which plaintiff was subjected constituted retaliation, e.g., the denial to plaintiff of a five percent pay differential.

14. As a direct and proximate result of being subjected to retaliation plaintiff has suffered and been damaged as described herein. Furthermore, plaintiff has sustained economic loss.

WHEREFORE, plaintiff requests relief as follows:

1. For an award of compensatory damages;

2. For an award of economic and/or special damages according to proof;

3. For an award of costs and a reasonable attorney's fee; and

4. For further relief, including an award of injunctive relief so as to compel the defendant to actually enforce a reasonable policy against sexual harassment and/or retaliation, as the Court or jury may deem just. Plaintiff requests the Court appoint a Special Master to compel the defendant to actually enforce reasonable policies against sexual/gender harassment and retaliation.

DATED this 20th day of November, 2006.

MARK MAUSERT, ESQ.