UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JACQUELYN SANDAGE,<br><br>        Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, dba NEVADA HIGHWAY PATROL, and DOES I-X,<br><br>        Defendants. | 03:06-CV-00634-LRH-RAM<br><br><u>ORDER</u> |

Presently before the court is a Motion for Preliminary Injunctive Relief (# 26[1]) filed by plaintiff, Jacquelyn Sandage ("Sandage"). Defendant, State of Nevada Department of Public Safety ("Defendant"), has filed an opposition (# 48), and Sandage replied (# 50).

**I. Factual Background**

This is a sexual harassment/retaliation action filed by Sandage against her employer. The parties reference several events relevant to the present motion. However, many factual assertions do not contain accurate citation to the record or sufficient factual explanation to allow the court to understand what happened or what a particular party alleges happened. Thus, no evidence was presented to support many of the contentions raised. It is the role of counsel to point the court toward specific pieces of evidence that support a particular contention. Nevertheless, the court has

---

[1]Refers to the court's docket number.

reviewed all portions of the record that have been identified by the parties. The following discussion is a summary of the major events that have been raised in connection with Sandage's motion for a preliminary injunction.[2]

Sandage was hired by the Nevada Department of Public Safety in 1992. (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 1.) Sandage began working as a state trooper soon after she was hired. *Id*. Sandage currently holds the rank of Captain in the Nevada Highway Patrol. *Id*. The Nevada Highway Patrol ("NHP") is a division of the Nevada Department of Public Safety.

In September, 2001, David Hosmer ("Hosmer") became Chief of the Nevada Highway Patrol. On December 27, 2001, Hosmer allegedly walked up to Sandage and stated, "I know why I don't like that new jacket, I can't see your ass." (Pl.'s Mot. for Prelim. Inj. (# 26), May 2, 2006, Memorandum, Ex. 5 at 76.) Sandage contacted Phil Brown of Internal Affairs the next day and told him that she was uncomfortable and didn't appreciate the comment. *Id*. at 77. Hosmer admitted to making the statement and apologized to Sandage the next day. *Id*. at 76.

Sandage alleges that she was retaliated against for making this complaint. Three weeks after Sandage's complaint about Hosmer's comment, Hosmer summoned Sandage to give her a disciplinary write-up stating that Sandage failed to obtain proper authorization for purchasing honor guard badges. (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 11.) Sandage reminded Hosmer that he had given her verbal authorization to purchase the honor guard

---

[2]Sandage's points and authorities describe several incidents that occurred with respect to other women working for the Nevada Highway Patrol. For example, Sandage argues that Ingrid Wetzell was exposed to sexually inappropriate joikes and language and left her job in June, 2004. Another example is Sandage's description of the alleged harassment of Bonnie Kendall. No date was given as to when this harassment allegedly occurred. While these incidents may be relevant to explain the alleged sexual harassment culture or to demonstrate gender discrimination, the court finds that they are not relevant to determining whether an injunction is necessary to prevent the alleged continuing sexual harassment of Sandage. Sandage is the only plaintiff in this action.

1  badges. *Id*. As a result, Hosmer rescinded the discipline. *Id*.

2  In late 2001, Sandage had a meeting with Hosmer and other command officers. (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 13.) During this meeting, Hosmer looked at Sandage and stated that a male trooper "had a set of cojones, but you wouldn't know about that." *Id*. Sandage describes this incident as an example of sexual misconduct and indicates she was offended and embarrassed. *Id*.

In March, 2002, Sandage was speaking to NHP personnel regarding NHP management practices. (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 14.) During the meeting, Sandage addressed the "sexual harassment culture" that was described in a report issued by the Audit and Review Committee. (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 14); (Pl.'s Mot. for Prelim. Inj. (# 26), Issues of Concern for the Nevada Highway Patrol, Ex. 4-2 at 39.) During the meeting, Hosmer interrupted Sandage and informed NHP personnel that Sandage's job entailed "providing a warm, moist environment for the Troopers to flourish." (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 14). Sandage attempted to minimize the impact of this comment by passing it off as a joke. *Id*.

In December, 2002, just before a promotional ceremony of a male employee, Hosmer made the following comment to Sandage, "At least he did it the honorable way." (Pl.'s Mot. for Prelim. Inj. (# 26), May 2, 2006, Memorandum, Ex. 5 at 95.) Sandage informed Ingrid Wetzell ("Wetzell"), who was the Personnel Officer at the time, of the comment but did not want Wetzell to act on the complaint. (Resp. to Pl.'s Mot. for Prelim. Inj. (# 48), Dep. of Ingrid Wetzell, Ex. F at 124:10-17.)[3] Nevertheless, Wetzell informed Director Kirkland who then had a conversation with

---

[3]The deposition excerpts provided by the parties have not been properly authenticated. A deposition or an extract therefrom is authenticated when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). This particular deposition excerpt does not identify the name of the deponent nor does it contain the reporter's certification. The court admonishes counsel that the failure to

3

Hosmer and Sandage. *Id*. at 124:17-19.  Sandage indicated that she was content with the conversation. *Id*. at 124:22-25.

Further evidence that allegedly demonstrates sexual harassment relates to statements made by Hosmer throughout his tenure as Chief.  According to Sandage, Hosmer referred to her as the "ice princess" and the "princess." (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 16.)

Sandage filed a sexual harassment and discrimination complaint in November, 2005. (Pl.'s Mot. for Prelim. Inj. (# 26), Decl. of Jacquelyn Sandage, Ex. 13 ¶ 19.)  Jeanette Cleaves ("Cleaves"), a Compliance Investigator for the Department of Personnel, commenced an investigation on December 8, 2005, the same day she received the complaint.  (Pl.'s Mot. for Prelim. Inj. (# 26), May 2, 2006, Memorandum, Ex. 5 at 74.)  The investigation substantiated many of Sandage's claims. *Id*.  No one was disciplined as a result of Sandage's sexual harassment allegations. (Pl.'s Mot. for Prelim. Inj. (# 26), Dep. of Jeanne Greene, Ex. 22-2 at 399:1-4.)

Following the investigation, a committee was formed "to provide an independent, unbiased review of the circumstances of Captain Sandage's claims." (Resp. to Pl.'s Mot. for Prelim. Inj. (# 48), Decl. of Glen Whorton ¶ 8.)  The committee focused on whether the conduct alleged by Sandage as found by Cleaves's report constituted a violation of Title VII. *Id*. ¶ 13.  The committee concluded that the conduct reported by Cleaves did not violate Title VII or constitute gender discrimination. *Id*. ¶¶ 14, 16.  The committee did, however, recommend that Hosmer be seriously disciplined for his misconduct and inappropriate behavior if he did not resign. *Id*. ¶ 17.  Although it is not clear, it appears that Hosmer was placed on administrative leave and subsequently retired.[4]

Another incident described by the parties occurred on May 9, 2006.  On that date, KKOH

---

properly authenticate evidence could lead to the court's exclusion of such evidence.

[4]The parties have not identified evidence explaining the specific circumstances surrounding Hosmer's retirement.

4

1  news/talk radio aired a story indicating that Major Wideman and Hosmer were placed on
2  administrative leave for sexual harassment allegations and that Sandage was also under
3  investigation for the misuse of Homeland Security Funds. (Pl.'s Mot. for Prelim. Inj. (# 26),
4  Investigative Report, Ex. 7 at 110.) The information regarding Sandage was not true. *Id*. The
5  State of Nevada initially indicated that it would not investigate the incident because there was no
6  information that indicated that any specific individuals in the department caused the broadcast or
7  that an internal investigation could identify any individual responsible. (Pl.'s Mot. for Prelim. Inj.
8  (# 26), July 19, 2006, Letter, Ex. 18.) Nevertheless, an investigation was ultimately conducted, but
9  was unable to determine who disseminated the false information regarding Sandage. (Pl.'s Mot. for
10 Prelim. Inj. (# 26), Investigative Report, Ex. 7 at 113.)

11       As a result of the alleged harassment, Sandage filed this action on November 20, 2006.
12 Sandage is seeking injunctive relief and damages based on claims for sexual harassment, retaliation
13 and gender discrimination.

14 **II. Legal Standard**

15       The Ninth Circuit uses two alternative tests to determine whether a preliminary injunction
16 should issue. According to the "traditional test," the equitable criteria for granting preliminary
17 injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of
18 irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships
19 favoring the plaintiff; and (4) advancement of the public interest. *Textile Unlimited, Inc. v. A..BMH*
20 *& Co., Inc.,* 240 F.3d 781, 786 (9th Cir.2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l*
21 *Football League,* 634 F.2d 1197, 1200 (9th Cir.1980)). In the alternative, the Ninth Circuit uses a
22 "sliding scale" or balancing test where preliminary injunctive relief is available to a party who
23 demonstrates either: (1) a combination of probable success on the merits and the possibility of
24 irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its
25 favor. *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001) (citing *Prudential*

26                                      5

1  *Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 874 (9th Cir.2000)).

2  **III.  Discussion**

3       Sandages's motion seeks a preliminary injunction that provides for the appointment of a
4  master to oversee and enforce Defendant's sexual harassment policy.  Defendant opposes the
5  motion arguing that Sandage has failed to demonstrate a threat of irreparable harm and that she has
6  failed to show a likelihood of success on the merits.  Defendant further argues that the relief sought
7  is overly broad and intrusive.

8       Upon reviewing the parties' points and authorities, the relevant law, and the record as a
9  whole, the court finds a preliminary injunction is not warranted.  The court agrees with Defendant
10 that the specific preliminary relief sought by Sandage is overly broad.

11      Defendant first argues that Sandage has not demonstrated irreparable harm.  Specifically,
12 Defendant argues that Sandage remains employed with NHP and has not suffered any loss.
13 Sandage argues that she may have already suffered irreparable harm in the form of stress which
14 may have resulted in severe medical consequences.  Sandage further argues that if she loses her
15 career from a constructive discharge, a monetary award would be a poor substitute.

16      The court finds that Sandage has failed to meet her burden of showing irreparable harm.
17 There is no evidence that Sandage has suffered severe medical consequences as a result of
18 Defendant's conduct.  Furthermore, there is no indication that Sandage will be constructively
19 discharged.  The specific events of alleged sexual harassment described by Sandage were primarily
20 perpetrated by Hosmer.  Hosmer is no longer employed with NHP.  Furthermore, the Nevada
21 Department of Public Safety obtained a new director, Philip Galeoto ("Galeoto"), on January 1,
22 2007.  Galeoto has acknowledge Defendant's sexual harassment policy and indicated that it is
23 currently being enforced. (Resp. to Pl.'s Mot. for Prelim. Inj. (# 48), Decl. of Phillip Galeoto ¶¶ 2-
24 9.)

25      Sandage has provided only marginal evidence indicating that she may be facing harassment

26

or retaliation at this time.  Additionally, Sandage has failed to demonstrate that she may be constructively discharged.  Furthermore, Sandage has failed to show that any constructive discharge would amount to irreparable harm.  Because Sandage has failed to demonstrate a possibility of irreparable harm, a preliminary injunction is inappropriate under the traditional test.

With respect to the balancing test, the court finds that serious questions have been raised. Sandage has presented evidence of questionable conduct.  Furthermore, Sandage has presented evidence indicating that NHP has a "sexual harassment culture."  The evidence presented is sufficient to raise questions as to whether a violation may have occurred.

Although questions have been raised, the court finds that the balance of hardships favors Defendant.  The mandatory injunctive relief sought by Sandage would require the court to oversee Defendant's entire sexual harassment policy.  This injunction would affect every employee within the Nevada Highway Patrol.  Furthermore, the injunction sought would require the court to interfere with the affairs of the State.  The evidence presented to the court does not support the relief requested, and the court finds that the balance of hardships weighs heavily in favor of Defendant. However, in reaching this finding, the court does not minimize the seriousness of sexual harassment.  To the extent Sandage may currently be facing harassment, a favorable outcome in this case would provide an adequate remedy.

The court further notes that the injunction sought by Sandage is also too broad.  The injunction sought is not designed specifically to prevent the alleged harassment of Sandage. Sandage has not identified any particular employees that continue to harass her or proposed a way to stop her alleged individual harassment.  Rather, Sandage is seeking an injunction that could potentially require the court to oversee allegations of sexual harassment that are not a part of this action.  This is beyond the scope of this case and the motion will be denied.  Although the court will deny Sandage's motion for a preliminary injunction, the court notes that such a denial does not reflect any view on the underlying merits of the case.  Rather, the denial of the motion only

1 indicates that the requested relief is inappropriate based on the record presented.

2      IT IS THEREFORE ORDERED that Sandage's Motion for Preliminary Injunctive Relief (#

3 26) is hereby DENIED.

4      IT IS SO ORDERED.

5      DATED this 11th day of January, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE